IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–03040–KMT

KELLY ROE,

      Plaintiff,

v.

AEGIS WHOLESALE CORPORATION,
AEGIS MORTGAGE CORPORATION,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
CHASE BANK USA, N.A.,
JPMORGAN CHASE BANK, N.A.,
FEDERAL HOME LOAN MORTGAGE CORPORATION, and
ALL UNKNOWN PERSONS WHO CLAIM ANY INTEREST IN THE SUBJECT MATTER
OF THIS ACTION,

      Defendants.

---

# ORDER

---

This matter is before the court on Defendants Mortgage Electronic Registration Systems,

Inc. ("MERS"); Chase Bank USA, N.A. ("Chase Bank"); JPMorgan Chase Bank, N.A.

("JPMorgan Chase"), and Federal Home Loan Mortgage Corporation ("Freddie Mac's")

"Motion to Dismiss Plaintiff's Amended Complaint."[1]  (Doc. No. 15, filed Nov. 22, 2013.)  For

the following reasons, Defendants' Motion to Dismiss is GRANTED.

---

[1] Hereinafter the court refers to MERS, Chase Bank, JPMorgan Chase, and Freddie Mac
collectively as "Defendants."

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint (Doc. No. 6, filed in state court on Oct. 18, 2013) and the parties' briefing with respect to this Order.

On March 8, 2005, Plaintiff executed a promissory note in favor of Defendant Aegis Wholesale Corporation, the "Lender," in the principal amount of $328,000.00 (the "Note"). (Am. Compl. ¶ 2; Ex. P-1.)  The Note provided that "[Plaintiff] understands that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (*Id.,* Ex. P-1.)  The Note provides further that "[Plaintiff] will make my monthly payments at P.O. Box 422039, Houston, TX 77242-4239 or at a different place if required by the Note Holder." (*Id.*)

As security for the Note, Plaintiff executed a Deed of Trust on her residence at 900 South County Road 21, Berthoud, Colorado 80513.  (*Id.* ¶ 2; Ex. P-2.)  The Deed of Trust provides:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements as the nominee.

(Am. Compl., Ex. P-2, Def. E.)  The Deed of Trust also provides:

> The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA [Real Estate Settlement Practices Act] requires in connection with a notice of transfer of servicing.

(*Id.* ¶ 20.)

2

Plaintiff alleges that in August 2007, Defendants Aegis Wholesale Corporation and Aegis Mortgage Corporation went bankrupt and, in March 2008, these Defendants ceased their operations in Colorado.  (Am. Compl. ¶ 15.)  According to Plaintiff's allegations, there have been no publicly recorded transfers or assignments of either the Note or the Deed of Trust.  (*Id.* ¶ 16.)

On May 12, 2008, Plaintiff executed a Quit Claim Deed, as grantor, to the Roe Family Trust, a revocable living trust for which plaintiff and her husband, Christopher Roe, are the sole co-trustees.  (*Id.* ¶ 18; Ex. P-3.)

Subsequent to the execution of the Note and Deed of Trust, Plaintiff was periodically notified via various "service transfer notices" that the servicing rights had been reassigned.  (*Id.* ¶ 24b.)  Since August 2005, Defendant JPMorgan Chase Bank c/o Chase Home Finance, LLC was the loan servicer and had been collecting monthly payments from Plaintiff.  (*Id.* ¶ 24c.)

In early 2012, Plaintiff sought to refinance the Note with JPMorgan Chase in order to obtain a lower interest rate and monthly payments.  (*Id.* ¶ 29.)  Plaintiff alleges that, despite being "fully approved by [JPMorgan Chase] and Freddie Mac," her attempt to refinance failed because JPMorgan Chase refused to provide information regarding the identity of the Note Holder or "adequate assurances that the duly canceled Note and all relevant indorsements/ assignments would be provided to the public trustee to release the Deed of Trust upon execution of the refinance paperwork."  (*Id.* ¶ 29a.)  More specifically, even though JPMorgan Chase and the title company required the identity of the Note Holder, JP Morgan Chase allegedly refused to provide Plaintiff with the identity of the Note Holder and refused to indemnify Plaintiff against

any possible imperfect recordation of the release of the original Deed of Trust and Note.  (*Id.* ¶ 29b.)

From early 2012 through April 2013, Plaintiff sought information from JPMorgan Chase and Freddie Mac regarding the identity of the then-current Note Holder, as well as adequate assurances that, upon loan payoff, the underlying debt would be discharged and the Note canceled.  (*Id.* ¶ 31.)  First, on March 14 2012, Plaintiff sent JPMorgan Chase a letter requesting, among other things, the (1) name, address, and phone number of the current Note Holder, (2) a certified copy of the Note including all indorsements in the possession of the current Note Holder, and (3) a certified copy of any written assignment(s) of the note by the Lender through its successors or assigns to the current Note Holder.  (Am. Compl., Ex. P-4.)

On March 28, 2012, JPMorgan Chase sent Plaintiff a letter informing Plaintiff that Freddie Mac was the "investor" on the loan.  (Am. Compl., Ex. P-5 at 1.)  JPMorgan Chase also attached an original copy of the Note, which included an allonge (hereinafter the "Aegis Allonge") containing two indorsements—one from Aegis Wholesale Corporation to Aegis Mortgage Corporation, and a second blank indorsement from Aegis Mortgage Corporation.  (*Id.* at 3-9.)[2]

On April 13, 2012, Plaintiff sent JPMorgan Chase an additional letter.  (Am. Compl. ¶ 31d; Ex. P-6.)  In that letter, Plaintiff asserted that JPMorgan Chase did not provide her with adequate assurances that it or Freddie Mac would be able to discharge the underlying debt evidenced by the Note and release the Deed of Trust upon payoff because JPMorgan Chase did

---

[2] JPMorgan Chase attached a copy of the Deed of Trust and a document entitled "Chase Detailed Transaction History."  (Am. Compl., Ex. P-5 at 10-30.)

not provide a certified copy of the original Note including all indorsements.  (Am. Compl., Ex. P-6.)  Plaintiff alleges that she never received a response to this letter.  (Am. Compl. ¶ 31d.)

On March 1, 2013, Plaintiff sent JPMorgan Chase a letter similar to her April 13, 2012 letter.  (Am. Compl., Ex. P-7.)  On March 19, 2013, JPMorgan Chase responded to Plaintiff with a letter stating that it, JPMorgan Chase, was the "investor" on the loan.  (Am. Compl., Ex. P-8 at 1.)  JPMorgan Chase also attached two copies of the Note.  (*Id.* at 4-18.)  The first copy of the Note featured the Aegis Allonge indorsed in blank, as well as a second allonge (hereinafter the "Chase Allonge") stating that it was an "[a]llonge to one certain Mortgage Note dated 3/8/2005 in favor of Chase Bank USA, N.A., executed by Kelly A. Roe."  (*Id.* at 10-11.)  The second copy of the Note featured only the Aegis Allonge; however, unlike the version of the Aegis Allonge attached to the first copy of the Note, the Aegis Allonge attached to the second copy of the Note was explicitly indorsed to Chase Bank USA, N.A.  (*Id.* at 18.)

On March 30, 2013, Plaintiff sent two more letters, to Freddie Mac and JPMorgan Chase, respectively.  (Am. Compl., Ex. P-9 & P-10.)  Plaintiff's letter to JPMorgan Chase demanded all principal and interest paid to JPMorgan Chase from August 22, 2005 to date based on JPMorgan Chase's alleged failure to provide adequate assurances that JPMorgan Chase was the Note Holder and had the right to collect payments on the Note.  (Am. Compl., Ex. P-9.)  Plaintiff's letter to Freddie Mac requested adequate assurances that Freddie Mac has the necessary paperwork and authority to discharge the underlying debt and release the Deed of Trust upon payoff.  (Am. Compl., Ex. P-10.)

On March 19, 2013, JPMorgan Chase responded to Plaintiff's first March 30, 2013 letter with a letter stating that the "investor" on the loan was Freddie Mac.  (Am. Compl., Ex. P-11 at

1.)   This letter attached a copy of the Note featuring the Aegis Allonge indorsed in blank.  (*Id.* at 11.)  Freddie Mac allegedly did not respond to Plaintiff's second March 20, 2013 letter.[3]  (Am. Compl. ¶ 32.)

Four days later, on April 12, 2013, JPMorgan Chase sent Plaintiff a letter stating "[o]ur understanding is that this loan is a valid and legally enforceable financial obligation with Chase." (Am. Compl., Ex. P-12 at 1.)  JPMorgan Chase attached a copy of the Note featuring the Aegis Allonge indorsed to Chase Bank USA, N.A. and the Chase Allonge featuring a blank indorsement.  (*Id.* at 10-11.)

Plaintiff alleges that before she filed her original Verified Complaint in this case on July 26, 2013 (*see* Doc. No. 5 [Orig. Compl.]), Freddie Mac claimed on its website that it had been the "owner" of the Note since May 31, 2005 (Am. Compl. ¶ 33).  Plaintiff alleges that, after her Verified Complaint was filed, JPMorgan Chase and Freddie Mac asserted that Freddie Mac is the current "owner/investor" of the Note and that such ownership transferred to Freddie Mac at some point after March 2012, through the blank indorsement on the Chase Allonge.  (*Id.* ¶ 35.)

## PROCEDURAL HISTORY

Plaintiff initiated this lawsuit by filing her original Verified Complaint in Larimer County District Court on July 26, 2013.  (*See* Orig. Compl.)  Plaintiff subsequently filed her Amended Complaint on October 18, 2013.  (*See* Am. Compl.)  Plaintiff's Amended Complaint asserts ten claims for relief:  five claims for declaratory judgment, pursuant to the Uniform Declaratory

---

[3] Plaintiff also alleges that Freddie Mac never responded to her prior letters seeking adequate assurances.  (*See* Am. Compl. ¶ 32.)  However, prior to her March 30, 2013 letter sent directly to Freddie Mac (Am. Compl., Ex. P-10), Plaintiff only carbon copied Freddie Mac on her communications with JPMorgan Chase (*see* Am. Compl., Ex. P-7 & P-8.)  Thus, Plaintiff's previous letters did not solicit a response from Freddie Mac.

Judgments Law, Colo. Rev. Stat. § 13-51-101 *et seq.*, and Colo. R. Civ. P. 57(g); and five additional claims for interpleader, fraud, breach of contract by anticipatory repudiation, unjust enrichment, and a preliminary injunction, respectively.  (*See id.*)

Defendants removed to this court on November 7, 2013 (*see* Not. Removal, Doc. No. 1) and then filed their Motion to Dismiss on November 22, 2013 (*see* Mot. Dismiss.)  Plaintiff filed a Motion to Remand on December 2, 2013, wherein she also requested an extension of 30 days to respond to Defendants' Motion to Dismiss in the event that her request for remand was denied.  (*See* Doc. No. 16.)  Chief District Judge Marcia S. Krieger denied Plaintiff's Motion to Remand on January 27, 2014 (Order, Doc. No. 22) and Plaintiff's Response to Defendants' Motion to Dismiss was filed on February 7, 2014 (Doc. No. 29 [Resp.].)  Defendants' Reply was filed on March 6, 2014.  (Doc. No. 32.)  Accordingly, this matter is ripe for the court's review and ruling.

Defendants' Motion to Dismiss argues that Plaintiff's Amended Complaint is properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* Mot. Dismiss.)  In addition, as discussed *infra,* the court raises a subject-matter jurisdiction issue pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Plaintiff's claims for declaratory relief.

**LEGAL STANDARDS**

*A.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.[4]  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

---

[4] It appears that Plaintiff has received a juris doctor degree.  (*See, e.g.,* Am. Compl. Ex. P-9 (March 30, 2013 letter from Plaintiff to JPMorgan Chase signed "Kelly A. Roe, J.D.").)  It is unclear, however, whether Plaintiff is a licensed attorney in Colorado or any other jurisdiction. *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe *pro se* pleadings liberally, the same courtesy need not be extended to *licensed* attorneys.") (internal citations omitted).  The court need not dwell on whether Plaintiff is entitled to the liberal construction afforded to *pro se* parties, as it would not affect the court's resolution of Defendants' Motion to Dismiss.

**B.**     *Lack of Subject Matter Jurisdiction*

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  Indeed, the court has an independent duty to examine whether it has subject matter jurisdiction over a case and therefore may consider the issue *sua sponte.  See State Farm Mut. Auto Ins. Co. v. Narvaez,* 149 F.3d 1269, 1270-71 (10th Cir. 1998).  A dismissal for lack of subject matter jurisdiction is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**C.      *Failure to State a Claim upon Which Relief can be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss,

means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two

prongs of analysis. First, the court identifies "the allegations in the complaint that are not

entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare

assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is

not in dispute."). "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

## ANALYSIS

As a threshold matter, Defendants assert that Plaintiff's claims are all premised on Defendants' inability to produce the original Note or prove who own or holds the Note. (*See* Mot. Dismiss at 7-11.) Defendants have submitted the original Note in Defendants' counsel's actual possession, which features the Aegis Allonge indorsed to Chase Bank USA, N.A. and the Chase Allonge indorsed in blank. (Mot. Dismiss, Ex. A.) Based on that original Note, which features the Aegis Allonge indorsed to Chase Bank USA, N.A., and the Chase Allonges indorsed in blank, Defendants argue that Plaintiff's claims must fail because it cannot be disputed that Freddie Mac is the holder of the Note. (Mot. Dismiss at 7-11.)

The court agrees with Plaintiff, however, that it cannot consider the original Note and allonges submitted by Defendants in addressing Defendants' Rule 12(b)(6) arguments. In resolving a motion to dismiss under Rule 12(b)(6), the court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co,* 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997)).

While the original Note is undoubtedly central to Plaintiff's claims, the court finds that, in light of the various different versions of the Note sent by JPMorgan Chase to Plaintiff, there are reasonable grounds to dispute the authenticity of the original Note attached to Defendants'

Motion to Dismiss.  More specifically, in response to Plaintiff's March 28, 2012 letter, JPMorgan Chase sent Plaintiff a copy of the Note featuring only the Aegis Allonge indorsed in blank.  (Am. Compl., Ex. P-5 at 3-9.)  Then, in response to Plaintiff's March 1, 2013 letter, JPMorgan Chase sent Plaintiff two copies of the Note—one featuring the Aegis Allonge indorsed in blank and the Chase Allonge indorsed in blank, and another featuring the only the Aegis Allonge indorsed to Chase Bank USA, N.A.  (Am. Compl., Ex. P-8 at 4-18.)  Finally, in Response to Plaintiff's March 30, 2013 letter, JPMorgan Chase sent Plaintiff a copy of the Note featuring only the Aegis Allonge indorsed in blank.  (Am. Compl, Ex. P-11 at 5-11.)

Accordingly, the court will not consider the original Note tendered by Defendants in resolving Defendants' Motion to Dismiss.  Nevertheless, as discussed below, even without considering the Note attached to Defendants' Motion to Dismiss, the court finds that Plaintiff's Amended Complaint is properly dismissed.

**A.**     ***Declaratory Judgment Claims***

Plaintiff's first through fourth claims for relief all seek a declaratory judgment regarding the authenticity, legal validity, and sufficiency of the Note and its allonges.  (Am. Compl. ¶¶ 39-59.)  Similarly, Plaintiff's fifth claim for relief seeks a declaratory judgment regarding whether JPMorgan Chase is the loan servicer on the Note.  (*Id.* ¶¶ 60-65.)

Defendants argue, *inter alia,* that Plaintiff lacks standing to seek declaratory judgment regarding the validity of the allonges because she was not a party to the allonges.  The court agrees.  There is ample case law holding that a borrower-plaintiff lacks standing to challenge the validity of assignments of a promissory note because the plaintiff is not a party to those

assignments.[5] *See, e.g., Mbaku v. Bank of Am., Nat'l Ass'n,* No. 12-cv-00190-PAB-KLM, 2012

WL 5464592, at *5 (D. Colo. Aug. 20, 2012) (citing *Cingolani v. BAC Home Loans Servicing,*

*L.P.,* Case No. 11-1519, 2012 WL 3029829, at *3 (E.D. Mich. July 25, 2012)); *see also Livonia*

*Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC,* 399 F. App'x 97, 102

(6th Cir. 2010).  Here, it is clear that, regardless of their validity, Plaintiff was not a party to the

allonges assigning or indorsing the Note.  As such, Plaintiff lacks standing to seek a declaratory

judgment regarding the validity of the allonges.

More importantly, the court finds *sua sponte* that Plaintiff cannot pursue her declaratory

judgment claims due to a lack of standing and ripeness.  Article III courts are limited to deciding

only "cases" and "controversies."  U.S. Const. art. III, § 2.  "Two components of the Article III

case or controversy requirement are standing and ripeness." *Colwell v. Dep't of Health &*

*Human Servs.,* 558 F.3d 1112, 1121 (9th Cir. 2009).  These justiciability doctrines "ensure that

federal courts address only concrete disputes between parties with present, adverse interests."

*Harshbarger v. Stevens,* No. 10-cv-01297, 2011 WL 684611, at *3 (D. Colo. Feb. 17, 2011)

(unpublished).

To establish standing, a plaintiff must establish three elements: "injury in fact,

traceability, and redressability." *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 892 (10th Cir.

2011).  The injury-in-fact prong requires a plaintiff to demonstrate that she suffered "an invasion

of a legally protected interest which is (a) concrete and particularized, and (b) actual or

---

[5] In response to Defendants' standing argument, Plaintiff asserts that the allonges constitute
indorsements of the Note, rather than assignments.  The court is not convinced that this
distinction is material.  Regardless of whether the Note was indorsed or assigned through the
allonges, Plaintiff was not a party to those indorsements or assignments and therefore lacks
standing to challenge them.

imminent, not conjectural or hypothetical." *Hydro Res. Inc. v. EPA,* 608 F.3d 1131, 1144 (10th Cir. 2010).  Allegations of future injury cannot satisfy the injury in fact requirement if the injury is merely possible; instead, the injury "must be 'certainly impending'" to establish standing. *Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1143 (2013) (quoting *Whitmore v. Arkansas* 495 U.S. 149, 158 (1990)).  Standing is determined at the time the action is brought, and thus courts must look to the facts that existed at the time the complaint was first filed, not to subsequent events, to determine whether a plaintiff has standing.  *S. Utah Wilderness Alliance v. Palma,* 707 F. 3d 1143, 1153 (10th Cir. 2013).

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted).  Although standing and ripeness are distinct concepts, the two doctrines are often intertwined because, "if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).

The fact that Plaintiff's first through fifth claims seek declaratory relief does not alter these justiciability requirements.  Indeed, an action for declaratory relief, like any other action, must still satisfy the case or controversy requirement.  *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S. Ct. 843, 848 (2014) (holding that the federal "Declaratory Judgment Act does not extend the jurisdiction of the federal courts") (internal quotation marks omitted); *see also ACLU v. Whitman*, 159 P.3d 707, 709 (Colo. App. 2006) (Declaratory judgment action

under Uniform Declaratory Judgment Law "must be based on an actual controversy, and the plaintiff must allege an injury in fact to a legally protected or cognizable interest").

Here, Plaintiff has not asserted any allegations demonstrating that she is suffering or will imminently suffer an injury due to the purported uncertainty as validity of the allonges, the identity of the Note Holder, or the identity of the servicer on the Note.  Notably, although it appears that Plaintiff stopped making payments on the Note in June 2013, Plaintiff does not allege that JPMorgan Chase or any of the other Defendants had commenced foreclosure proceedings at the time she filed her original Verified Complaint in state court.  Nor are there any allegations showing that such foreclosure proceedings were imminent at that juncture.  *See Young v. Wachovia Mortg. Co.,* No. 11-cv-01963-CMA, 2011 WL 6934110, at \*2-3 (D. Colo. Dec. 30, 2011) (finding a lack of standing and ripeness on declaratory judgment claim regarding the defendants' authority to initiate a foreclosure where the plaintiff's allegations failed to establish that foreclosure proceedings had been initiated or were imminent).  *See also Palma,* 707 F.3d at 1153 (standing is determined at the time the action is brought).  Indeed, to the contrary, Plaintiff concedes in her Amended Complaint that such proceedings have not yet been instituted. [6]  (Am. Compl. ¶ 108.)

To the extent Plaintiff may be asserting that her inability to refinance the Note and Deed of Trust constituted an injury-in-fact for purposes of her declaratory judgment claims, she does not allege, nor does it otherwise appear from the Note or Deed of Trust, that she had a legally

---

[6] The absence of any allegations regarding the status of any foreclosure proceedings is critical.  If foreclosure proceedings had been initiated at the time Plaintiff filed this action, the court would likely have to abstain from hearing Plaintiff's declaratory judgment claims under the *Younger* abstention doctrine.  *See Beeler Props., LLC v. Lowe Enter. Residential Investors, LLC,* No. 07-cv-00149-MSK-MJW, 2007 WL 1346591, at \*1 (D. Colo. May 7, 2007).

protected right to refinance. *Hydro Res.,* 608 F.3d at 1144.  Moreover, even if Plaintiff did have

such a right, at best, a declaratory judgment in her favor would constitute an impermissible

declaration that Defendants violated her rights in the past. *See, e.g., Sardakowski v. Clements,*

No. 12-cv-01326-RBJ-KLM, 2013 WL 3296569, at *6 (D. Colo. July 1, 2013); *Green v.*

*Branson,* 108 F.3d 1296, 1299 (10th Cir. 1997) (citing *Ashcroft v. Mattis,* 431 U.S. 171, 172-173

(1977)) (the "legal interest" necessary to give rise to a claim for declaratory judgment "must be

more than simply the satisfaction of a declaration that a person was wronged.")

Further, to the extent Plaintiff's declaratory judgment claims are premised on her concern

over whether the Note will be discharged and the Deed of Trust released upon full payoff, they

are not ripe. *Texas,* 523 U.S. at 300.  Although the Note Holder is contractually obligated upon

full payment of the Note to (1) affirm that the debt evidenced by the Note has been fully

discharged, and (2) produce the duly cancelled original Note so that the Deed of Trust may be

released (Am. Compl. ¶ 23), Plaintiff does not allege that she repaid the principal balance of the

Note at the time she filed her original Complaint, or that repayment was imminent.  In fact, to the

contrary, because Plaintiff admits that she stopped making payments on the Note in June 2013,

repayment may not occur at all.  (Am. Compl. ¶ 103; Orig. Compl. ¶ 47.)

Similarly, Plaintiff fails to allege an injury in fact to support her fifth claim for a

declaration regarding whether JPMorgan Chase is the servicer on the Note.  More specifically,

although Plaintiff alleges that she is "reasonably and substantially uncertain as to whether

[JPMorgan Chase] has been validly collecting monthly payments from her," Plaintiff does not

allege that the payments she made were not applied to the debt evidenced by the Note.

Ultimately, it appears that Plaintiff is requesting that the court determine the legal rights of the parties so that Defendants will be precluded from initiating foreclosure proceedings, or to prevent some other future injury.  "This is a request for an advisory opinion, which the Court is not empowered to give." *Young,* 2011 WL 6934110, at *4 (citing *Flast v. Cohen,* 392 U.S. 83, 86 (1968).  Therefore, the court finds that Plaintiff lacks standing to bring her declaratory judgment claims and, relatedly, that these claims are not ripe for adjudication.  As a consequence, Plaintiff's first through fifth claims will be dismissed without prejudice for lack of subject matter jurisdiction.

**B.      *Claim Six - Interpleader***

Plaintiff's sixth claim for relief is for interpleader.  Defendants argue that this interpleader claim fails as a matter of law because Plaintiff (1) cannot demonstrate a reasonable likelihood that she will be exposed to double liability and (2) has not alleged the existence of a fund that may be tendered to the Court Registry for adjudication.  (Mot. Dismiss at 15-16; Reply at 6.)  The court agrees.

An interpleader action may be characterized as either a "statutory" interpleader, pursuant to 28 U.S.C. § 1335, or as a "rule" interpleader, pursuant to Fed. R. Civ. P. 22.  It allows a stakeholder to bring "several claimants into a single action and to require them to litigate among themselves to determine which has the valid claim." *Amoco Prod. Co. v. Aspen Group,* 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999).  "The typical interpleader action proceeds in two distinct stages.  During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants.  During the second stage, the court determines the respective rights of the claimants to the fund."

*Bank of Colo. v. Berwick,* No 09-cv-02552-CMA-CBS, 2011 WL 1135349, at *5 (D. Colo. Mar. 29, 2011) (quotation marks and citation omitted).

"The burden is upon the stakeholder to justify an interpleader proceeding by establishing that [s]he is or may be exposed to double or multiple liability because of adverse claims to the *res* that [s]he holds." *Williston Basin Interstate Pipeline Co. v. W. Gas Processors, Ltd.,* No. 88-A612, 1988 WL 73310, at *2 (D. Colo. July 8, 1988). Although "claims for interpleader are to be construed liberally," where "the likelihood of future litigation and multiple liability is [] remote and speculative . . . interpleader is not appropriate." *Conn. Gen. Life Ins. Co. v. Wermelinger,* 114 F.3d 1181, 1997 WL 256704, at *1-2 (5th Cir. Apr. 7, 1997) (unpublished). *See also Benton v. Adams,* 56 P.3d 81, 87 (Colo. 2002) ("The person asserting interpleader must allege facts sufficient to support a reasonable belief that exposure to double or multiple liability may exist.").

The court first finds that the alleged adverse claims of JPMorgan Chase and Freddie Mac to payments under the Note are too speculative to support an interpleader claim. Plaintiff does not allege that these Defendants have actually asserted adverse claims to payment under the Note; nor is there any indication that such claims may be asserted in the future. Instead, Plaintiff relies solely on the purported uncertainty regarding the identity of the Note Holder to support her interpleader claim. Under the circumstances and facts alleged, the court finds that any threat of double or multiple liability is too speculative and remote to support an interpleader claim.

More importantly, even if Plaintiff were presented with a likelihood of double or multiple liability, Plaintiff's Amend Complaint does not identify a fund, or *res*, that could be the subject of an interpleader claim. "A prerequisite to filing an interpleader action is that there must be a

single, identifiable fund." *Rhoades v. Casey,* 196 F.3d 592, 600 (5th Cir. 1999); *see also Gen. Atomic Co. v. Duke Power Co.,* 553 F.2d 53, 57 (10th Cir. 1977) (if there is "no tangible or intangible property subject to the demands of the claimants, the main purpose of the interpleader action cannot be brought about."). Here, Plaintiff's past payments under the Note cannot constitute the fund subject to interpleader as they are no longer in her control. (*See* Am. Compl., Ex. P-9 at 2 (March 30, 2013 letter wherein Plaintiff demands a refund of all past payments made to JPMorgan Chase).) *See also Gen. Atomic Co.,* 553 F.2d at 56-57 (it is essential that the "*res* be under the control of the person bringing the lawsuit, so as to be deliverable to the registry of the court."). Nor does Plaintiff allege that she is currently in possession of, and able to tender, all future payments due under the Note. In the absence of control and an ability to tender the disputed funds to the court, Plaintiff's sixth claim is simply a "naked declaratory claim of ownership," rather than a true claim for interpleader. *Schneider v. Cate,* 405 F. Supp. 2d 1254, 1267 (D. Colo. 2005).

Accordingly, the court finds that Plaintiff's sixth claim for interpleader fails as a matter of law. Therefore, Defendants' Motion to Dismiss is granted to the extent it seeks to dismiss Plaintiff's sixth claim for relief.

As an additional matter, the court notes that Defendants Aegis Wholesale Corporation and Aegis Mortgage Corporation are only named as Defendants on Plaintiff's claims for declaratory judgment and Plaintiff's interpleader claim. Although Aegis Wholesale and Aegis Mortgage have not appeared in this action, as discussed above, the court has concluded that it lacks subject matter jurisdiction over Plaintiff's declaratory judgment claims and that Plaintiff's

interpleader claim fails as a matter of law.  As such, Aegis Wholesale Corporation and Aegis

Mortgage Corporation will be dismissed as defendants from this action.

**C.      *Claim Seven - Fraud***

Plaintiff's seventh claim asserts that Defendants committed fraud by making numerous

different representations in their correspondence with Plaintiff as to whether JPMorgan Chase or

Freddie Mac was the Note Holder or "investor" on the Note.  (*See* Am. Compl. ¶¶ 72-94.)

Defendants argue that this claim fails because it is barred by the economic loss rule and because

Plaintiff otherwise fails to allege that she detrimentally relied on Defendants' representations.

(Mot. Dismiss at 16-18.)  The court agrees.

Under Colorado law, the economic loss rule provides that a "party suffering only

economic loss from the breach of an express or implied contractual duty may not assert a tort

claim for such a breach absent an independent duty of care under tort law."  *Standard Bank, PLC

v. Runge, Inc.,* 443 F. App'x 347, 349 (10th Cir. 2011).  This rule "serves to maintain a

distinction between contract and tort law."  *Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256,

1262 (Colo. 2000).

In determining whether the economic loss rule is applicable, the court must focus "on the

source of the duty alleged to have been violated."  *Id.*  A duty arising in tort must be "sufficiently

independent of the contract to preclude application of the economic loss rule."  *Id.* at 351.  A tort

duty that is sufficiently independent of the contract at issue must meet two conditions: "[f]irst,

the duty must arise from a source other than the relevant contract[;] [s]econd, the duty must not

be a duty also imposed by the contract."  *Registry Sys. Int'l, Ltd. v. Hamm,* No. 08-cv-00495-

PAB-MJW, 2010 WL 326327, at *10 (D. Colo. Jan. 20, 2010) (citing *Haynes Trane Serv.*

*Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)).  Broadly, "[t]ort

obligations generally arise from duties imposed by law . . . without regard to any agreement or

contract," and "[c]ontract obligations, on the other hand, 'arise from promises made between

parties [to] allocate risks and costs during bargaining.'"  *Level 3 Commc'ns, LLC v. Liebert

Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008) (citing *Town of Alma*, 10 P.3d 1256, 1262 (Colo.

2000)).

Here, Plaintiff admits that the "Lender/Note Holder has a contractual obligation under the

Note and Deed of Trust to notify plaintiff of any change in the Lender/Note Holder's address."

(Am. Compl. ¶ 27.)  Thus, any duty to accurately disclose the identity of the Note Holder arises

out of contract, pursuant to the Note and Deed of Trust.  Further, although there is a "common

law duty of reasonable care in communicating information in a business transaction," the "breach

of that duty as alleged in this case does not differ in any way from the contractual duty" to

disclose the identity and address of the Note Holder.  *W. Convenience Stores, Inc. v. Thielen,* No.

09-cv-02626-LTB-BNB, 2011 WL 866755, at *6 (D. Colo. Mar. 14, 2011).  As such, because

the duty underlying Plaintiff's fraud claim does not arise from a duty independent from those

imposed by the Note and Deed of Trust, Plaintiff's fraud claim is barred by the economic loss

rule.

Moreover, even if Plaintiff could overcome the economic loss rule, the court finds that

Plaintiff's fraud claim would nevertheless fail.  To establish a claim for fraud, a plaintiff must

allege: "(1) that the defendant made a false representation of material fact; (2) that the one

making the representation knew that it was false; (3) that the person to whom the representation

was made was ignorant of the falsity; (4) that the representation was made with the intention that

it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Vinton v. Virzi,* 269 P.3d 1242, 1247 (Colo. 2012).

Even assuming Defendants knowingly made false representations as to the identity of the Note Holder, Plaintiff fails to allege that her reliance on those representations resulted in damages.  Plaintiff alleges that she continued to make payments to JPMorgan Chase in reliance on JPMorgan Chase's representation that it owned the Note.  (Am. Compl. ¶ 93.)  However, Plaintiff does not affirmatively allege that her payments to JPMorgan Chase were not applied to her debt under the Note.  Instead, Plaintiff only alleges that "*[i]f* these payments were not made to the Note Holder, plaintiff was induced to make payments that would not be used to pay down the debt." (*Id.* ¶ 94, emphasis added.)  Thus, Plaintiff's allegations establish only a hypothetical *possibility* that she could have been damaged as a result of her reliance on Defendants' alleged misrepresentations.  This is insufficient to establish a claim for relief.  *Iqbal,* 129 S. Ct. at 1949.

Accordingly, the court finds that Plaintiff's fraud claim is barred by the economic loss rule and also fails to state a claim for relief.  Consequently, Defendants' Motion to Dismiss is granted with respect to Plaintiff's seventh claim for relief.

**D.    *Claim Eight – Breach of Contract by Anticipatory Repudiation***

Plaintiff's eighth claim for relief alleges that Freddie Mac, and JPMorgan Chase, as Freddie Mac's agent, engaged in an anticipatory breach of contract by failing to sufficiently respond to Plaintiff's requests for adequate assurances regarding whether Freddie Mac would be able to discharge the Note and release the Deed of Trust upon full payoff.  (Am. Compl. ¶¶ 95-103.)  Defendants argue that Plaintiff's allegations fail to demonstrate that either Freddie Mac or

JPMorgan Chase engaged in anticipatory repudiation.  (Mot. Dismiss at 18-19.)  The court agrees.

"In order to constitute an anticipatory breach of contract there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arises." *Johnson v. Benson,* 725 P.2d 21, 25 (Colo. App. 1986) (quotation marks and citation omitted).  Anticipatory repudiation requires an "overt communication of intention or an action which . . . demonstrates a clear determination not to continue with performance." *Albright v. McDermond,* 14 P.3d 318, 324 (Colo. 2000).  *See also Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n,* 67 P.3d 12, 21 (Colo. 2003) (citing *Meinhardt v. Inv. Builders Props. Co.,* 518 P.2d 1376, 1379 (Colo. App. 1973)) ("A repudiation of a contract must consist of a present, positive, unequivocal refusal to perform the contract, not a mere threat to abandon its obligations under the contract.").[7]

Here, the exhibits attached to Plaintiff's Amended Complaint demonstrate that JPMorgan Chase responded to Plaintiff's requests for adequate assurances.  (Am. Compl., Ex. P-5, P-8, P-11, & P-12.)  Although Plaintiff may not have obtained all the information she sought, the letters she received from JPMorgan Chase do not include an overt communication or other unequivocal manifestation of intent to refuse to discharge the Note and release the Deed of Trust upon payoff.[8]

---

[7] Although the determination of whether anticipatory repudiation has occurred is "ordinarily" a question of fact, *Johnson,* 725 P.2d at 25, Plaintiff's Amended Complaint must still meet federal pleading requirements.  Specifically, the well-pleaded facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.

[8] Further, although Freddie Mac never responded to Plaintiff's March 30, 2013 request for adequate assurances, the court does not believe this amounted to an anticipatory repudiation,

Likewise, standing alone, Freddie Mac's alleged failure to respond to Plaintiff's March 30, 2013 letter fails to demonstrate an unequivocal repudiation of its duties, if any, under the Note and release the Deed of Trust.  This is particularly true when JPMorgan Chase, Freddie Mac's agent as the loan servicer, contemporaneously responded to the concerns raised in Plaintiff's March 30, 2013 letter.  Ultimately, at very best, JPMorgan Chase's responses to Plaintiff's letters requesting adequate assurances presented only a threat that the Note Holder would not perform its duties under the Note and Deed of Trust.  As a consequence, the court finds that Plaintiff's Amended Complaint fails to establish a plausible claim for breach of contract based on anticipatory repudiation.

**E.      Claim Nine – Unjust Enrichment**

Plaintiff's ninth claim for relief alleges that, by collecting payments on the Note since August 2005, notwithstanding the purported uncertainty as to the identity of the Note Holder, JPMorgan Chase "may have been unjustly enriched at the expense of Plaintiff."  (Am. Compl. ¶ 106.)  Defendants assert that the existence of the Note and Deed of Trust preclude Plaintiff's unjust enrichment claim.  (Mot. Dismiss at 19-20.)  The court agrees.

Unjust enrichment is a judicially created equitable remedy that prevents one party from unfairly benefitting at the expense of another party. *Jorgensen v. Colorado Rural Props.*, *LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010).  It is a purely equitable remedy, the obligation does not arise from a contract formed between the parties.  *Id.*  "Indeed, a claim for unjust enrichment may not be asserted if there is a valid contract covering the subject matter of the alleged obligation to pay."  *Id.*  This is because the express contract precludes any implied-in-law

---

particularly where the loan servicer, JPMorgan Chase, responded to a letter requesting adequate assurances sent the same day.

contract.  *Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816

(Colo.App.2003).  Here, the Note and Deed of Trust expressly governed the terms of the loan

and repayment.  Further, as already discussed, Plaintiff does not allege that the payments she has

made under the Note have not been applied to her debt.  Accordingly, unjust enrichment is not an

appropriate remedy.

**F.      *Claim Ten – Preliminary Injunction***

Plaintiff's tenth claim seeks a preliminary injunction restraining Defendant from

"instituting or prosecuting any proceeding relating to the Note or Deed of Trust" and from

"posting of any negative information on plaintiff's credit report."  (Am. Compl. ¶¶ 108, 110.)  A

preliminary injunction is not a freestanding, substantive claim for relief.  *H-D Mich., LLC v.*

*Sovie's Cycle Shop, Inc.,* 626 F. Supp. 2d 274, 279 n.6 (N.D.N.Y. 2009).  Instead, to secure a

preliminary injunction, a plaintiff must establish a substantial likelihood that she is likely to

prevail on the merits of her substantive claims.  *Prairie Bank of Potawatomi Indians v. Pierce,*

253 F.3d 1234, 1246 (10th Cir. 2001).  In light of the court's foregoing conclusions that

Plaintiff's substantive claims are properly dismissed, Plaintiff's request for a preliminary

injunction must also fail.  Accordingly, Defendants' Motion to Dismiss is granted to the extent it

seeks to dismiss Plaintiff's tenth claim for relief.

Wherefore, for the foregoing reasons, it is

ORDERED that Defendants' "Motion to Dismiss Plaintiff's Amended Complaint" (Doc.

No. 15) is GRANTED.  Plaintiff's Amended Complaint is DISMISSED as follows—Plaintiff's

first, second, third, fourth, and fifth claims are DISMISSED without prejudice and Plaintiff's

remaining claims are DISMISSED with prejudice.  It is further

ORDERED that "Plaintiff's Omnibus Motion for Sanctions and for Partial Summary

Judgment" (Doc. No. 46), "Plaintiff's Motion for Judicial Notice" (Doc. No. 47), and "Plaintiff's

Motion to Compel Responsive Answers to Interrogatories and Production of Documents" (Doc.

No. 67) are DENIED as moot.  It is further

ORDERED that the Clerk of Court is directed to CLOSE this case.

Dated this 24th day of September, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge